# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lyon Financial Services, Inc.
a Minnesota corporation, doing
business as US Bancorp Business
Equipment Finance Group,

Court File No. 08-CV-05523 (DWF/JJK)

             Plaintiff,

vs.

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

Shyam L. Dahiya, M.D., Inc., a
California corporation and Shyam L.
Dahiya, individually,

             Defendants and Third Party
             Plaintiffs,

vs.

Syneron, Inc.,

             Third Party Defendant.

---

This memorandum of law is offered in support of the Plaintiff's Lyon Financial Services, Inc., d/b/a US Bancorp Business Equipment Finance Group's Motion for Summary Judgment.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Lyon Financial Services, Inc., d/b/a US Bancorp Business Equipment Finance Group ("Lyon") is a corporation organized and existing under the laws of the State of Minnesota and is engaged in the business of equipment lease financing. *Affidavit of Shannon Vandevere.*

Defendant Shyam L. Dahiya, M.D., Inc. ("SDI") executed 'E-Z' Lease Agreement No. 500-0089050-000 ("Agreement") with the Plaintiff for the lease of two of Third-Party Defendant Syneron's ("Syneron") medical device systems – the eLight elos System and the Vela elos System. *See Exhibit A to Affidavit of Shannon Vandevere* (hereinafter Exhibit A). The Agreement was executed by the Defendant on September 22, 2006 and the Plaintiff on October 11, 2006. *See Exhibit A, page 1.* The Agreement was personally guaranteed by Shyam L. Dahiya ("Dahiya). *See Exhibit A, page 1.*

The Agreement contains an express disclaimer of all warranties of fitness for a particular purpose and merchantability:

> WE MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANABLE. YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIMENT BASED UPON YOUR OWN JUDGMENT AND DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR ANY SUPPLIER. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND NOTHING THE SUPPLIER STATES CAN AFFECT YOUR OBLIGATION UNDER THE AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST THE SUPPLIER OR THE EQUIPMENT.

*Id., page 2, paragraph 5.* Upon execution, the express terms of the Agreement provide that it is "irrevocable and unconditional in all respects", and that "THIS IS A NONCANCELLABLE IRREVOCABLE AGREEMENT. THIS AGREEMENT CANNOT BE CANCELLED BY YOU." *Id., page 1, paragraph 4.* Defendant Dahiya

signed the Agreement directly below that statement on behalf of Defendant SDI. Defendant Dahiya unconditionally personally guaranteed all obligations of Defendant SDI under the Agreement. *Id., page 1, paragraph 5.*

In addition, as part of the Agreement, SDI and Dahiya acknowledged that it "shall not assert against Lessor (the Plaintiff) any claim or defense you may have with reference to the Equipment its delivery or non-delivery or its installation." *Id., page 1, paragraph 4.* Finally, SDI and Dahiya authorized the Plaintiff's purchase of the equipment from Syneron. *Id.*

SDI and Dahiya failed to make timely payments as they came due pursuant to the Agreement and are therefore in default of the Agreement. *See Affidavit of Shannon VanDevere.* Because there are no material facts in dispute and Lyon is entitled to Judgment as a matter of law, Lyon respectfully requests that the court enter summary judgment in its favor against Defendants SDI and Dahiya in the amount of One Hundred Seventy-Seven Thousand Five Hundred Fifty-eight and 11/100 Dollars ($177,558.11) together with attorneys fees and costs and interest thereon from July 7, 2008, at the rate of $38.92 per day

## ARGUMENT

### I. Lyon is entitled to Summary Judgment against Defendants.

#### A. Summary Judgment Standard.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). The Court must view

the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Id.* However, the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2555, 91 L.Ed.2d 265 (1986) (internal citations omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank,* 92 F.3d at 747. The nonmoving party must then demonstrate the existence of facts in the record which create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed. 202 (1986); *Krenik,* 47 F.3d at 957. As the Supreme Court of the United States has noted, if the moving party has carried it burden on a Motion for Summary Judgment, the opponent must do more than simply show there is some metaphysical doubt as to any material fact. *Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,586 (1986).*

**B.      There are no material facts in dispute.**

There are no genuine issues of material fact regarding the default by the Defendants under the Agreement. The Agreement specifically provides that non-payment

constitutes default of the Agreement. *See Exhibit A.* The Agreement was for a thirty-six (36) months. *Id.* The Defendants have not made payments as required by the Agreement and therefore are in default of the Agreement. *See Affidavit of Shannon VanDevere.* As a result, the Plaintiff is entitled to summary judgment against the Defendant.

**C.      The Plaintiff is entitled to judgment as a matter of law**

      **1.      The Agreement is a finance lease.**

In this case SDI entered into the Agreement under which it selected certain equipment from Syneron and turned to the Plaintiff to fund the transaction. *See Affidavit of Shannon VanDevere.* The Agreement by nature is a finance lease. *Minnesota Statutes §* *336.2A-103, comment (g).* A finance lease may be created by statute or the same effect may be accomplished by the terms of the agreement of the parties. *Id.* Due to the unique nature of the transaction and since the lessor was not involved in the lessee's choice of the vendor or supplier of the equipment, the lessee's obligation to pay the lessor is irrevocable upon acceptance of the equipment. *Minn. Stat. § 336.2A-407.* Upon acceptance of the equipment, the lessee has "no right to cease payments under the lease despite its dissatisfaction with the performance of the software and equipment." *Great America Leasing Corp. v. Star Photo Lab,* 672 N.W.2d 502, 504 (Iowa 2003). This commonly referred to as the "hell or high water" provision of a finance lease. *Id.* The Agreement specifically states that "You agree this is a finance lease under Article 2A of the UCC and your rights and remedies are governed exclusively by this Agreement and you waive any and all other rights and remedies." *See Exhibit A, page 2, paragraph 12.*

Finance leases with "hell or high water" provisions are consistently held to be enforceable no matter what the defense. *See Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp.*, 419 F.3d 107, 110 (2nd Cir. 2005). In *St. Paul Leasing Co. vs. Winkel Ins.*, 244 N.W.2d 661 (Minn. 1976), the Minnesota Supreme Court affirmed a summary judgment awarded a lessor with essentially the same warranty disclaimer language in its contract as the one at issue here and indicated lessee's claim must be addressed solely with the vendor. This holding is consistent with the purpose of these clauses in that the finance lessor essentially acts as a bank – buying equipment and leasing it to lessee – but neither selecting the equipment nor the supplier and moreover never even seeing the equipment. The "hell or high water" provision entitles the finance lessor to payment regardless – just as with a bank on a secured loan. This is appropriate since the finance lessor has nothing to do with the equipment and such protection is essential to the finance leasing industry. *GreatAmerica*, 672 N.W.2d at 505, *Hinkel Excavating & Construction, Inc. v. Construction Equipment Int'l, Ltd.*, 2001 WL 34008497 *7 (N.D. Iowa 2001). "To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier-assignee of rental payments is guaranteed security for his outright loan to the lessor. Without giving effect to such clause, the only security for this assignee would be to repossess the equipment at substantially diminished value." *Id., citing Colorado Interstate Corp vs. CIT Group*, 775 F. Supp. 369 (D.Colo. 1991) aff'd 993 F.2d 743 (10th Cir. 1993); *In re O.P.M. Leasing Services, Inc.*, 21 B.R. 993, 1006-1007 (Bankr. S.D.N.Y. 1982). Failure to enforce the "hell or high water" provision of a finance lease would constitute an impermissible

attempt to reconstruct the contract contrary to the intent of the parties. *Hinkel*, 2001 WL34008497 at *6. Therefore public policy mandates the enforcement of the Agreement.

The *St. Paul Leasing* case was cited by the United States District Court for Minnesota in *AgriStor Leasing vs. Hansen*, 1985 WL 6073 (D. Minn. 1985). Relying on *Winkel*, the court granted the lessor summary judgment on lessee's claim of breach of warranty and agency as the lessor had nothing to do with the selection of the equipment and no evidence existed of agency other than that lessor's lease documents were provided to lessee by vendor. *See also In Re O.P.M.*, 21 BR at 1007 (despite fraudulent vendor lessee still obligated to pay); *Leasetec Corporation v. Orient Systems*, 85 F.Supp 2d 1310 (S.D. Fla. 1999) (despite vendor fraud and claim of lack of consideration, lessee payment obligation remains). The essential practical consideration requiring liability as a matter of law in these situations is that these clauses are essential to the equipment leasing industry. To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier of rental agreements is guaranteed meaningful security for his outright loan to the lessee. The Legislature has acknowledged as much by passing Uniform Commercial Code, Article 2A, which includes statutory approval of "hell and high water" terms. *See Minnesota Statutes, Section 336.2A-407.*

In *Colorado Interstate Corp vs. CIT Group*, 775 F. Supp. 369 (D.Colo 1991) *aff'd* 993 F2d 743 (10th Cir. 1993), the court ruled a "hell or high water" clause as meaning the lessee agreed to pay lessor despite any claim against supplier and lessee's sole remedy was against the supplier. The lessor's right to payment was "absolute and

unconditional". This, despite the fact the supplier had gone bankrupt.  In *Siemens Credit v. Newlands*, 905 F. Supp. 757 (N.D. Cal 1994), the court rejected claims that even alleged fraud on part of supplier relieved the lessee of its obligation to pay lessor.  The lessee entered into a lease contract with an affiliate of the vendor.  Lessee made payments for 10 months and then ceased claiming the equipment was defective.  In rejecting the lessee's arguments the court reasoned the lease was a "finance" lease that contained warranty disclaimer language (both conspicuous and reasonable) that obligated the lessee to address all equipment problems to the vendor. The court ruled that the lessor was not estopped by an alleged fraudulent misrepresentation of the vendor because it was made solely by the vendor's sales representative; no evidence was presented that any such representation was made by the lessor and the lease explicitly provided that the vendor was not an agent of the lessor (even though and affiliate).

In *Well Fargo Financial Leasing, Inc. v. LMT Fette, Inc.*, 382 F.3d 852 (8th Cir. 2004) the lessee alleged fraud and misrepresentation by the vendor and that the vendor was an agent of the lessor. The Eight Circuit held that to establish fraudulent misrepresentation (fraud in the inducement) as a defense under Iowa law, the lessee had to show by clear, satisfactory and convincing evidence: (1) that an agent of the lessor made a representation, (2) that was false, (3) and material, (4) made with knowledge that the representation was false, (5) and intent to deceive, (6) on which the defendant justifiably relied, (7) that the representation was the proximate cause of the harm, and (8) that damages resulted. The Court in that matter held based on the record that the vendor's representations could not be imputed to the lessor on the basis of either express or

implied authority. Specifically, there was no evidence that the lessor gave the vendor either express or implied authority to act as its agent. The Court also held that the vendor was not acting as an apparent agent of the lessor. Specifically, the Court held that action by the lessor was necessary to grant apparent authority to the vendor and while the vendor had the lessor's preprinted lease forms, such would not give rise to the vendor having apparent authority – especially given that the forms made clear that the vendor was not an agent of the lessor and could not bind the lessor.

The Court in the *LMT Fette, Inc.,* case further discussed that under Iowa law negligent misrepresentation by the vendor cannot act as a defense to the claims of a third party (the lessor) unless there was a basis for imputing the actions of the vendor to the lessor. The Court noted that the lessee's failure to establish that the vendor was an agent of the lessor was fatal to the argument and that accordingly alleged misrepresentation by the vendor could not be imputed to the lessor. The Court held that any fraud, misrepresentation or other misconduct by a third party (the vendor) will not void the objectively valid contract with the lessor, unless it was shown that the vendor was an agent of the lessor. The Court found no such agency and enforced the lease as an Article 2A finance lease according to its terms.

Finally, in *Lyon Financial Services, Inc. d/b/a US Bancorp Manifest Funding Services v. Marty Hearyman, MD d/b/a Northside Healthcare Center,* No. A08-1795 2009 WL 1515598 (Minn.Ct.App. June 2, 2009), the Minnesota Court of Appeals ruled that in the case of a finance lease, fraudulent inducement of the Defendant by a third-party did not provide a defense to the enforcement of the agreement.

In this matter, Defendant SDI expressly authorized Lyon to purchase the equipment from Syneron. *See Exhibit A, page 1, paragraph 4.* Moreover, SDI acknowledged that the Agreement became irrevocable upon its execution. *Id.* As such, the Agreement cannot now be cancelled or terminated. *Id.* Pursuant to the Agreement Defendants are to look to the supplier of the equipment for any complaints regarding the equipment, and are obligated to make all required payments under the Agreement regardless of any claim or complaint of nonperformance on the part of the supplier or of the equipment. *Id.* Moreover, the Defendants agreed they would not assert against Lyon any claim or defense it had in regards to the equipment. *Id.*

As such, Exhibit A is a valid finance lease between Lyon and the Defendant and should be enforced.

### D.   Syneron is not an agent of Lyon.

Under Minnesota law an agency relationship is a fiduciary relationship whereby a principal is bound by an agent's actions, provided they are within the scope of his or her authority. An agency relationship may be created by express language or by conduct, and it need not be in writing. However, there is no agency without persuasive evidence to establish the elements of an agency relationship which are:

1. Manifestation of mutual consent between a principal and an agent such that the agent will act on the principal's behalf;
2. The right of control by the principal over the agent.

*A. Gay Jenson Farms Co. v. Cargill, Inc.,* 309 N.W.2d 285, 290 (Minn.1981); *Jurek v. Thompson,* 308 Minn. 191, 197, 241 N.W.2d 788, 791 (1976).

Plaintiff and the Syneron are separate and distinct companies, not affiliates. *See Affidavit of Shannon Vandevere*. Syneron is not an agent of the Plaintiff. *Id.* Moreover, there was no evidence showing that Lyon granted consent to any party in the Agreement to act as an agent for Lyon. Specifically, Lyon did not give any such consent to Syneron. In fact, the Agreement clearly indicates that none of those parties are agents of Lyon. Combining that clear language with that standard "hell-or-high-water" and "disclaimer of warranties" language in the Agreement leads to the inescapable conclusion that Syneron was not agent of Lyon. As such, any alleged statements or misrepresentations made by Syneron cannot be imputed to Lyon.

### E.   Summary Judgment is Appropriate.

Where the contract terms are not patently ambiguous, summary judgment is appropriate. <u>J.S. Const. Co. v. ITT Indus. Credit Co.</u>, 358 N.W.2d 716 (Minn. App. 1984). The Agreement and the law are clear. The Defendants are in default of the Agreement.

Based upon these undisputed facts, the clear provisions in the Agreement, summary judgment should be entered in favor of the Plaintiff. Defendants acknowledged having reviewed the terms of the Agreements and agreed to be bound by such. The Agreement indicates that it cannot be cancelled or terminated. *See Exhibit A.* Both the terms of the Agreement and Minnesota law provides that even if there was fraud committed by a third party, it is not attributable t Lyon and cannot serve as a defense to the enforcement of the Agreement. Therefore, Lyon is entitled to judgment against the Defendants as a matter of law.

**II.     THE PLAINTIFF IS ENTITLED TO INTEREST, ITS ATTORNEYS FEES AND COSTS INCURRED IN CONNECTION WITH THIS ACTION.**

The Agreement provides that in the event of default the Plaintiff "may recover interest on any unpaid balance at the rate of 8% per annum." *See Exhibit A.* Since the Defendant is clearly in default of the Agreement, Plaintiff is entitled to interest on the unpaid balance pursuant to the contract terms. *Minn. Stat. 549.09.*

Parties may also legally contract for the payment of attorney's fees. *Midway Nat'l Bank v. Gustafson*, 165 N.W.2d 218, 224 (Minn. 1968); *Busee v. Board of County Commissioners, Sibley Co.*, 241 N.W.2d 794, 798 (Minn. 1976). The Agreement in this case provides that the Defendants agree to pay the Plaintiff's costs and attorney's fees incurred in collecting the unpaid balance under the Agreement. *See Exhibits A, page 2, paragraph 12.* Upon the execution of the Agreement, this promise became irrevocable pursuant to Minn. Stat. § 336.2A-407. Accordingly, an award of attorney's fees, costs and disbursements is appropriate in this matter.

**CONCLUSION**

The Defendants executed the Agreement. The Agreement became irrevocable per its terms based upon this execution. The Agreement entered into by the parties is a finance lease. Pursuant to the terms of the Agreement, Defendant was required to make payments as scheduled. The Defendant failed to make the required number of payments on the Agreement and as a result has defaulted upon the Agreement. Pursuant to the Agreement, in the case of default, Lyon is entitled to receive the full amount of the rental

payments.  In addition, pursuant to the Agreements, Lyon is entitled to recover interest, costs and attorney fees.

Therefore, Plaintiff respectfully requests entry of Judgment against Defendants in the amount of One Hundred Seventy-Seven Thousand Five Hundred Fifty-eight and 11/100 Dollars ($177,558.11) together with attorney's fees and costs and interest thereon from July 7, 2008, at the rate of $38.92 per day

Dated: October 26, 2009

**LYON FINANCIAL SERVICES, INC. D/B/A USBANCORP MANIFEST FUNDING SERVICES**

BY:   **Troy C. Kepler**
      John D. Docken, No. 171116
      Troy C. Kepler, No. 0295127
      Attorneys for Plaintiff
      1310 Madrid Street
      Marshall, MN 56258
      Telephone: (507) 532-7708
      Facsimile: (507) 532-7729