UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Lyon Financial Services, Inc. a Minnesota corporation, doing business as US Bancorp Business Equipment Finance Group, | Court File No. 08-CV-05523 (DWF/JJK) |
| Plaintiff, | |
| vs. | **REPYLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Shyam L. Dahiya, M.D., Inc., a California corporation and Shyam L. Dahiya, individually, | |
| Defendants and Third Party Plaintiffs, | |
| vs. | |
| Syneron, Inc., | |
| Third Party Defendant. | |

---

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Lyon Financial Services, Inc., d/b/a US Bancorp Business Equipment Finance Group ("Lyon") has moved for summary judgment against Defendants Shyam L. Dahiya, M.D., Inc. ("SDI") and Shyam L. Dahiya ("Dahiya), individually. The Defendants do not dispute that they executed the Agreement and that they have not made payment a required pursuant to the Agreement between the parties. *See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.* However, the Defendants make several arguments including that the finance lease with Lyon is void because Lyon allegedly does not own the equipment, that the Agreement was not accepted, that the Defendants' have

the same defenses to the contract that they would have against the supplier Syneron, that the Defendants' were fraudulently induced to enter the finance lease, that the Defendants' duties are excused due to frustration and impossibility and mutual mistake and finally that the "hell or high water" clause in the finance lease is unenforceable. All of these arguments amount to red herrings at best. There is no dispute that Lyon and the Defendants are parties to valid, non-cancellable, irrevocable finance lease. Moreover, there is no dispute that the Defendant's are in default of that finance lease. Because there are no material facts in dispute, and Lyon is entitled to judgment as a matter of law.

## ARGUMENT

### I. Lyon is the owner of the property that is the subject of the Agreement.

As previously set forth Lyon and Defendants Shyam L. Dahiya, M.D., Inc. ("SDI") and Shyam L. Dahiya ("Dahiya) are parties to a 'E-Z' Lease Agreement No. 500-0089050-000 ("Agreement") for the lease of two medical devices manufactured by Third-Party Defendant Syneron, Inc. ("Syneron")– the eLight elos System and the Vela elos System (hereinafter collectively the "Equipment"). As previously argued it is clear that the Agreement is a finance lease.

As part of the transaction and as is the case with finances leases, Lyon as the lessor, was billed by Syneron for the equipment by invoice dated September 28, 2006. *See Exhibit A to Supplemental Affidavit of Shannon Vandevere.* The invoice states "Goods shall remain the property of Syneron until full paid for and cleared through our financial institution." *Id.* Lyon issued payment in full to Syneron for the Equipment as well as for equipment that was the subject of an unrelated transaction with a check dated October 11, 2006. *See Exhibit B to*

*Supplemental Affidavit of Shannon Vandevere.* The check was deposited into Syneron's account and good funds transferred to them. *See Exhibit B to Supplemental Affidavit of Shannon Vandevere.* The Defendants' admit that the Equipment was delivered and received by them. *See Affidavit of Shyam L. Dahiya ¶21.* To date, Lyon is not aware of any claim by Syneron that they were not fully compensated for the Equipment. *Supplemental Affidavit of Shannon Vandevere .*

Given the above and that the Defendants have presented no evidence to the contrary, it is clear from the facts above and the clear wording of the invoice from Syneron that Lyon is the owner of the Equipment . The Defendants selected the Equipment from Syneron. Lyon was billed for the purchase of the Equipment by Syneron. Lyon issued payment to Syneron for the Equipment. The funds were received by and deposited into Syneron's bank account and Syneron has made no claim of ownership of the Equipment. As such the Defendants' claims that Lyon does not own the Equipment are wholly without merit.

### II. The Agreement is a finance lease and is the only agreement that governs the rights of Lyon and the Defendants.

Lyon will address the Defendants contentions contained in Sections II (No Acceptance), III (Rights of Assignee), and V (Impossibility and Frustration) of its brief together. Initially, Lyon will expound on its assertion that the Agreement in question is a finance lease. Minnesota law defines a finance lease as a lease in which:

(1) the lessor does not select, manufacture or supply the goods,
(2) the lessor acquires the goods or the right to the use and possession of the goods in connection with the lease, and
(3) either

> (i) the Lessee receives a copy of the contract evidencing the lessor's purchase of the goods or a disclaimer statement on or before signing the lease contract, or
>
> (ii) the lessee's approval of the contract evidencing the lessor's purchase of the goods or a disclaimer statement is a condition to the effectiveness of the lease contract.

Minn. Stat. 336.2A-103(g). A finance lease may be created by statute or the same effect may be accomplished by the terms of the agreement of the parties. *Id.* Due to the unique nature of the transaction and since the lessor was not involved in the lessee's choice of the vendor or supplier of the equipment, the lessee's obligation to pay the lessor is irrevocable upon acceptance of the equipment. *Minn. Stat. § 336.2A-407.*

In addition, Minnesota courts have held that "[W]ritten contracts are important documents and not lightly disregarded." *Weigand v. Walser Automotive Groups, Inc.,* 670 N.W.2d 449, 454 (Minn.Ct.App.2003) citing *Minneapolis Public Housing Authority v. Lor,* 591 N.W.2d 700, 704 (Minn. 1999) (stating, "Unambiguous contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.").

In this case the Agreement states in part:

> 4.  Sign the acceptance/delivery agreement.
> By signing below, you certify all conditions and terms of this agreement on the front and back have been reviewed and acknowledged. You further acknowledge and agree that in the event you are not satisfied with the delivery or installation of the Equipment that you shall only look to persons other than the Lessor such as the manufacturer, the installer or supplier and shall not assert against Lessor any claim or defense you may have with reference to the Equipment its delivery or non-delivery or its installation. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects and payments shall being immediately and shall be due continuously hereafter. **You authorize the purchase of the Equipment from the supplier as set out in the Quotation, which contract for purchase you expressly approve as a condition precedent to this Lease, and you may contact the supplier for your warranty rights (which we transfer to you) any separate service obligations, neither of which**

4

are our responsibility...THIS IS A NONCANCELLABLE IRREVOCABLE AGREEMENT. THIS AGREEMENT CANNOT BE CANCELLED BY YOU.(emphasis in original).

Also, on page 2 of the Agreement.

1.   **Lease Agreement.** You agree to lease from us the personal property described under "ITEM DESCRIPTION"...for business purposes only. You agree to all terms and conditions contained in this Agreement which together are a *COMPLETE* statement of our Agreement regarding the listed equipment and supersedes any purchase order or outstanding invoice. This Agreement may be modified only by written agreement and not by course of performance. (emphasis added).

5. **Warranty and Disclaimer.** WE MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANABLE. YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIMENT BASED UPON YOUR OWN JUDGMENT AND DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR ANY SUPPLIER. *WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT.* THE SUPPLIER IS NOT AN AGENT OF OURS AND NOTHING THE SUPPLIER STATES CAN AFFECT YOUR OBLIGATION UNDER THE AGREEMENT. *YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST THE SUPPLIER OR THE EQUIPMENT.* (emphasis added).

12.   **Default and Remedies:** (last two sentences) *You agree that this is a finance lease under Article 2A of the UCC* and your rights and remedies are governed exclusively by this Agreement and you waive any and all other rights and remedies. You waive any and all rights and remedies, including those afforded pursuant to article 2A of the UCC.(emphasis added).

It is clear from the wording of the Agreement that the Agreement executed by the Defendants and delivered to Lyon that both parties intended the Agreement to be a finance lease. It is undisputed that the Defendants entered into an Agreement wherein they selected the equipment from Syneron. Instead of paying for the Equipment outright from Syneron, the

5

Defendants turned to Lyon to fund the purchase. Lyon's only function was to finance the purchase of the equipment. Lyon was not involved in the selection, manufacture or supply of the equipment. As stated above, Lyon acquired title to this equipment in connection with the Agreement. As such the Agreement is a finance lease.

It is clear from the Agreement that Lyon and the Defendants intended that the Agreement would be the only instrument to govern their relationship. The Defendants clearly authorized the purchase of the Equipment. The Defendants admittedly received delivery of the Equipment. The Defendants expressly agreed that the Agreement was noncancellable and irrevocable. The Defendants expressly agreed in writing that the Agreement was the "complete" statement of the Agreement relating to the equipment. The Defendants expressly agreed that their rights and remedies were governed exclusively by Agreement and they waived any and all other rights and remedies.

It is also clear from the Agreement that Lyon disclaimed any and all warranties regarding the Equipment. Moreover, the Defendants executed the Agreement and clearly agreed that Lyon would not be subject to any claims such as the ones they are now making regarding the warranties and performance of the Equipment.

Despite these clear and unambiguous terms the Defendants inexplicably claim that the Agreement is not valid. The Defendants claim that somehow Lyon is in fact not a finance lessor as clearly stated in the Agreement but instead is an assignee of a sales agreement which is clearly between Syneron and the Defendant. However, the Agreement between Lyon and the Defendants contains no reference to the sales agreement. Lyon was not a party too nor was it an assignee of the sales agreement. As such, the Defendants' claims that Lyon is an assignee of

the sales agreement and not a finance lessor are wholly unsupported in the record. Moreover, the Defendants' claims that terms and conditions of the sales agreement between the Defendants' and Syneron are wholly without merit.

Finally, the Defendants claim that their contractual duties are excused for impossibility and frustration of purpose and their contention again focuses on their unsupported belief that Lyon does not have title to the Equipment and that somehow Lyon is an assignee of the sales agreement and not the finance lessor. As previously shown, such conclusions and contentions are unfounded and without merit.

Given that no material issues of fact exist, this Court should enforce the clear and unambiguous language of the Agreement and grant summary judgment to Lyon.

### III. The alleged fraudulent inducement by Syneron is not a defense to the enforcement of the Agreement.

As previously set fort in Lyon's Memorandum in Support of its Motion for Summary Judgment under Minnesota law regarding finance leases "fraud of a party or a party's agent is a defense to *THAT* party's enforcement of the contract." *Lyon Financial Services, Inc. d/b/a US Bancorp Manifest Funding Services v. Marty Hearyman, MD d/b/a Northside Healthcare Center*, No. A08-1795 2009 WL 1515598 at *4 (Minn.Ct.App. June 2, 2009)(emphasis added). Moreover, in *Well Fargo Financial Leasing, Inc. v. LMT Fette, Inc.*, 382 F.3d 852 (8th Cir. 2004) a case in which the Minnesota Court of Appeals relied upon in reaching its decision in *Hearyman*, the court stated "[a] third party's negligent misrepresentation, however, cannot form the basis of a defense to performance of a contract without a basis for imputing the third party's actions to the plaintiff." *Id.* at 865.

As previously argued, it is clear that the Agreement is a finance lease. There is no evidence that Lyon, the party seeking to enforce the Agreement, engaged in any fraudulent activity. Moreover, there is no evidence that Syneron is an agent of Lyon. As such, any purported fraud or misrepresentation by Syneron in regards to the Equipment which was leased as part of the valid finance lease should not be imputed to Lyon to prevent enforcement of the Agreement.

### IV. There was not a mutual mistake as between Lyon and the Defendants

The Defendants in their response summarily assert that there was a mutual mistake and as such the Agreement should be rescinded. However, the Defendants provide no evidence to support their claim of a mutual mistake. The only support the Defendants provide for their claims is that Lyon, along with the Defendants, were under the mistaken impression that Syneron would tender services to make the Equipment safe. No where in the record is there found evidence of what Lyon's impression was as the finance lessor. In fact, just the opposite language is contained in the Agreement. *See Exhibit A to Affidavit of Shannon Vandevere.*

No where in the Agreement is there a reference to services that Syneron would tender. There is no evidence before this court about what Lyon believed Syneron would tender for services. As the finance lessor, those alleged services are of no import as they remain the sole responsibility of the supplier pursuant to finance leases. However, it is clear from the Agreement that Lyon had no responsibility for the Equipment or its performance and that Lyon as the finance lessor expected payment without regard to the Equipment's performance.

Assuming arguendo that because there is no evidence of a mutual mistake and Defendant were to argue in the alternative that there was a unilateral mistake, "[i]t is clear,

nevertheless, that the court, under its equitable power, does have the right to rescind a contract for a purely unilateral mistake of one contracting party not induced or contributed by the other. However, it is equally clear that in the interest of preserving some reasonable stability in commercial transactions the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood provisions of the contract." *Id. (citations omitted).* The Minnesota Supreme Court has stated that "the weight of authority is to the effect that a court, in the exercise of its equitable powers, may cancel a contract at the instance of a party who proves that he was mistaken as to a material element of the contract at the time he made it, if he acts promptly and the contract can be rescinded without prejudice to the other party; that is if both parties can be placed in statu quo." *Olson v. Shepard*, 206 N.W. 711 (1926) *(citations omitted).*

There is no dispute that the Defendants executed the Agreement. There is no disputed that the Agreement was clear, unambiguous and the complete agreement between Lyon and Defendants. Relying on the executed Agreement, Lyon funded the purchased the Equipment thereby making full payment to Syneron. There is no evidence that Lyon induced the Defendants to enter into the Agreement nor did Lyon contribute to any misunderstanding he may have had about the Agreement. Relying on the Defendants actions, Lyon paid Syneron One Hundred Seven Thousand Six Hundred Eighty and 60/100 Dollars ($107,680.60) for the Equipment that was the subject of the Agreement. In return, Lyon expected to receive thirty-six (36) monthly payments. Instead, Lyon received no payments, a defaulted contract and a substantial loss.

Rescission of the Agreement for what could hardly be said to be a unilateral mistake would prejudice Lyon in that it must shoulder every bit of the loss in this matter as the parties cannot be returned to status quo now some three years later. In addition, rescission of a finance lease such as this based on these facts would under cut the stability of commercial transactions similar in nature

Based on the above, it is clear that there was not a mutual mistake in this matter and that a claim for unilateral mistake would fail as well. As such, there are no material facts in dispute and Lyon is entitled to a judgment against the Defendants as a matter of law.

### V.   The hell or high water provisions of the Agreement do not constitute exculpatory contracts and do not violate public policy.

As previously argued by Lyon, due to the unique nature of the transaction and since the lessor was not involved in the lessee's choice of the vendor or supplier of the equipment, the lessee's obligation to pay the lessor is irrevocable upon acceptance of the equipment. *Minn. Stat. § 336.2A-407.* Upon acceptance of the equipment, the lessee has "no right to cease payments under the lease despite its dissatisfaction with the performance of the software and equipment." *Great America Leasing Corp. v. Star Photo Lab,* 672 N.W.2d 502, 504 (Iowa 2003). This commonly referred to as the "hell or high water" provision of a finance lease. *Id.* Finance leases with "hell or high water" provisions are consistently held to be enforceable no matter what the defense. *Id.; accord, Well Fargo Financial Leasing, Inc. v. LMT Fette, Inc.,* 382 F.3d 852 (8th Cir. 2004); *AgriStor Leasing vs. Hansen,* 1985 WL 6073 (D. Minn. 1985); *St. Paul Leasing Co. vs. Winkel Ins.,* 244 N.W.2d 661 (Minn. 1976); *Lyon Financial Services, Inc. d/b/a US Bancorp Manifest Funding Services v. Marty Hearyman, MD d/b/a Northside*

*Healthcare Center,* No. A08-1795 2009 WL 1515598 (Minn.Ct.App. June 2, 2009); *Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp.,* 419 F.3d 107, 110 (2nd Cir. 2005); *Hinkel Excavating & Construction, Inc. v. Construction Equipment Int'l, Ltd.,* 2001 WL 34008497 *7 (N.D. Iowa 2001); *Colorado Interstate Corp vs. CIT Group,* 775 F. Supp. 369 (D.Colo. 1991) aff'd 993 F.2d 743 (10th Cir. 1993); *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 993, 1006-1007 (Bankr. S.D.N.Y. 1982); *Leasetec Corporation v. Orient Systems,* 85 F.Supp 2d 1310 (S.D. Fla. 1999); *Siemens Credit v. Newlands,* 905 F. Supp. 757 (N.D. Cal 1994). Moreover, the Minnesota Legislature has already spoken on the issue of public policy and the acceptance of these "hell or high water" clauses by passing Uniform Commercial Code, Article 2A, which includes statutory approval of "hell and high water" terms. *See Minnesota Statutes, Section 336.2A-407.*

It is Lyon's position that hell or high water provisions are not exculpatory clauses. *Black's Law Dictionary* defines an exculpatory clause as "[a] contractual provision relieving a party from any liability resulting from a negligent or wrongful act." Hell or high water provisions do not seek to relieve finance lessors from liability for their negligent of wrongful acts. Hell or high water clause only provide that in event a finance lessee has an complaint in regards to equipment that it is leasing that said lessee must take up that issue with the proper party, the vendor/supplier that has a direct relationship to the leased equipment, and not the lessor who merely financed the transaction.

Assuming arguendo that the hell or high water clause in the Agreement was analyzed as an exculpatory provision under Minnesota law, it would not be found to violate public policy. As stated the *Schlobohm* case cited by the Defendants to support their position the court

identifies the criteria for evaluating exculpatory clauses. The two prong test to consider is (1) whether here was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision) and (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service. *Schlobohm v. Spa Petite, Inc.*, 326 N.W2d 920, 923 (Minn.1982).

The Defendant does not contend and there is no evidence to support a claim that there was any disparity of bargaining power between Lyon and the Defendants. The Agreement itself is a very short, single page document, printed on two sides. It contains a total of fifteen (15) paragraphs. It is written in "Plain English". It can hardly be characterized as a "boilerplate" contract, laden with fine print. Moreover, there has been no suggestion that the Defendants are unsophisticated or unable to consult legal counsel before executing a contract. The Agreement was negotiated based upon Defendants' selection of equipment and funding, suggesting that there is a certain degree of sophistication and bargaining power on its part. Moreover, Plaintiff does not have the exclusive right to provide financing services in this region.

Furthermore, the commercial lease of equipment is not a public or essential service. The agreement is a private commercial finance lease agreement that does not have far reaching impacts on the public. Simply because the lessee chooses to use the equipment that is the subject of finance lease in the medical profession does not make the private, single, lease transaction a matter of public interest. Moreover, the case referred in the *Schlobohm* referring to transactions involving hospitals and doctors being thought to be public in nature involved a

release of a hospital from liability for its future negligence as a condition to admission to the hospital. *(emphasis added); See Tunkl v. Regents of University of California,* 60 Cal.2d 92, 383 P.2d 441, 32 Cal.Rptr. 33 (1963). Such a clause can hardly be said to be analogous to a hell or high water clause where a finance lessee is merely directed to address all issues relating to lease equipment with the equipment supplier as opposed to a finance company that has little or no relationship with the equipment.

Given the above it is clear that as a matter of law the hell or high water provision of the Agreement is not void as against public policy.

## CONCLUSION

For the reasons set forth above and in its previous submissions, Plaintiff respectfully requests entry of Judgment against Defendants in the amount of One Hundred Seventy-Seven Thousand Five Hundred Fifty-eight and 11/100 Dollars ($177,558.11) together with attorney's fees and costs and interest thereon from July 7, 2008, at the rate of $38.92 per day

Dated: December 4, 2009

**LYON FINANCIAL SERVICES, INC. D/B/A USBANCORP BUSINESS EQUIPMENT FINANCE GROUP**

BY: **Troy C. Kepler**
John D. Docken, No. 171116
Troy C. Kepler, No. 0295127
Attorneys for Plaintiff
1310 Madrid Street
Marshall, MN 56258
Telephone: (507) 532-7708
Facsimile: (507) 532-7729