# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lyon Financial Services, Inc., a Minnesota
corporation, with its principal offices at
Marshall, Minnesota, d/b/a US Bancorp
Business Equipment Finance Group,

Civil No. 08-5523 (DWF/JJK)

        Plaintiff,

v.

Shyam L. Dahiya, M.D., Inc., a California
corporation; and Shyam L. Dahiya, individually,

        Defendants.

**MEMORANDUM
OPINION AND ORDER**

---

John D. Docken, Esq., US Bank, and Troy C. Kepler, Esq., US Bancorp BEFG, counsel for Plaintiff.

Karl A. Oliver, Esq., The Oliver Group, PLC, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by

Plaintiff Lyon Financial Services, Inc., d/b/a US Bancorp Business Equipment Finance

Group ("Lyon"). For the reasons set forth below, the Court grants Lyon's motion.

## BACKGROUND

Lyon is engaged in the business of equipment lease financing. Defendant

Dr. Shyam L. Dahiya is a bariatric surgeon and the President of Defendant Shyam L.

Dahiya, M.D., Inc. ("SDI") (together, Defendants). (Aff. of Shyam L. Dahyia ("Dahiya

Aff.") ¶ 10; Compl. ¶ 3.) Syneron, Inc. ("Syneron") manufactures and distributes medical aesthetic devices powered by patented technology that are used in a broad range of body-shaping applications. (Third-Party Compl. ¶ 7.) Syneron marketed two devices to Defendants, the eLight elos System and the Vela elos System (together, the "Equipment"). (*Id.* ¶ 11.) The Equipment is used to, among other things, remove excess skin from bariatric patients after they experience a significant reduction in body weight. (*Id.* ¶ 14.) Defendants claim that Syneron made various representations and warranties, including promises that Defendants would receive training support for use of the Equipment. (*Id.* ¶¶ 13, 15, 17; Dahiya Aff. ¶¶ 13-19.)

Defendants decided to purchase the Equipment, and in September 2006, Syneron and SDI entered into a Sales Agreement (the "Syneron Sales Agreement"). (Aff. of Karl A. Oliver ("Oliver Aff.") ¶ 2, Ex. A.) The Syneron Sales Agreement provides for the "Sale of Equipment":

> Syneron agrees to sell and [SDI] agrees to purchase the medical device system(s) described on the Equipment Schedule attached hereto and made a part hereof (the "Equipment" or the "System") for the purchase price and in accordance with the covenants, terms and conditions of this Agreement. . . .

(*Id.*)

In order to finance the purchase of the Equipment, in the fall of 2006, SDI entered into an "E-Z Lease Agreement" with Lyon (the "Agreement"). (Aff. of Shannon Vandevere ("Vandevere Aff.") ¶ 3, Ex. A.) The Agreement provides that Lyon would pay Syneron for the Equipment and lease it to Defendants. In return, Defendants would

make monthly payments to Lyon.  The Agreement was personally guaranteed by

Dr. Dahiya.  (*Id.*)

> The Agreement contains the following "WARRANTY DISCLAIMER":
>
> WE MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING
> THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR
> THAT THE EQUIPMENT IS MERCHANTABLE.  YOU AGREE THAT
> YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF
> EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND
> DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR
> REPRESENTATIONS MADE BY US OR ANY SUPPLIER.  WE DO
> NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR
> PERFORMANCE OF THE EQUIPMENT.  THE SUPPLIER IS NOT AN
> AGENT OF OURS AND NOTHING THE SUPPLIER STATES CAN
> AFFECT YOUR OBLIGATION UNDER THE AGREEMENT.  YOU
> WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS
> AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT
> AGAINST SUPPLIER OR THE EQUIPMENT.

(*Id.* at 2, ¶ 5.)  In addition, the Agreement provides:

> By signing below, you certify all conditions and terms of this agreement on
> the front and back have been reviewed and acknowledged.  You further
> acknowledge that you understand and agree that in the event you are not
> satisfied with the delivery or installation of the Equipment that you shall
> only look to persons other than the Lessor such as the manufacturer,
> installer or supplier and shall not assert against Lessor any claim or defense
> you may have with reference to the Equipment its delivery or non-delivery
> or its installation. Upon your signing below, your promises herein will be
> irrevocable and uncondional in all respects and payments shall begin
> immediately and shall be due continuously hereafter. . . . THIS IS A
> NONCANCELABLE IRREVOCABLE AGREEMENT.  THIS
> AGREEMENT CANNOT BE CANCELLED BY YOU.

(*Id.* at 1, ¶ 4.)  The Agreement further provides:  "You agree that this is a finance lease

under Article 2A of the UCC and your rights and remedies are governed exclusively by

this Agreement and you waive any and all other rights and remedies."  (*Id.* at 2, ¶ 12.)

Defendants received the Equipment. Pursuant to the Agreement, Lyon paid Syneron $107,680.60 for the Equipment. (Supp. Aff. of Shannon Vandevere ("Supp. Vandevere Aff.") ¶¶ 2, 3, Exs. A & B.) Under the Agreement, Defendants were to make thirty-six monthly lease payments each in the amount of $4,377.08 to Lyon. (Vandevere Aff. ¶ 3, Ex. A at 1, ¶ 3.) Defendants failed to do so. (Vandevere Aff. ¶ 4.)

Lyon initiated this action in May 2008 in Minnesota State Court, alleging that Defendants were in default for failing to make payments under the Agreement. Defendants removed the case to this Court and dispute that they have breached the Agreement. In February 2009, Defendants filed a Third-Party Complaint against Syneron alleging claims for Unfair Competition, Breach of Contract, Breach of Warranty, Common Law Fraud, Promissory Estoppel, Equitable Estoppel, Unjust Enrichment, Negligent Misrepresentation, and for Declaratory Judgment. Syneron filed a Motion to Dismiss these claims on the grounds that they were governed by a forum-selection clause and the Third-Party Complaint was ultimately transferred to the United States District Court for the Northern District of Illinois. (Doc. No. 41.)[1]

## ANALYSIS

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the

---

[1] The Court has learned that the district court in Illinois dismissed Defendants' action against Syneron without prejudice, and Defendants now anticipate litigating their claims against Syneron in Illinois state court.

evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I.     Liability

Lyon asserts that Defendants failed to make timely payments under the Agreement, that Defendants are in default of the Agreement, and that the Court should enter judgment in favor of Lyon and against Defendants in the amount of $177,558.11 together with attorney fees, costs, and interest.  Lyon asserts that there are no genuine issues of material fact regarding Defendants' default under the Agreement.  Lyon asserts that the Agreement specifically provides that non-payment constitutes default of the Agreement and that Defendants have not made the required payments.

There is no dispute that Lyon and Defendants entered into the Agreement and that Defendants have not made payments under the Agreement. While Defendants do not deny that they failed to make payments under the Agreement, they assert that summary judgment is not appropriate because (1) Lyon lacks standing as a lessor under the Agreement because it never took title to the Equipment; (2) Lyon was an assignee of the Syneron Sales Agreement; (3) Defendants never legally accepted the property; (4) Defendants are entitled to rescission of the Agreement; (5) there was a mutual mistake; and (6) the "hell or high water" provision in the Agreement violates public policy.

First, Defendants assert that there is no evidence that Syneron transferred title to Lyon and therefore the lease was never operative. Lyon has produced an invoice from Syneron for the Equipment dated September 28, 2006. The invoice provides that "[g]oods shall remain the property of Syneron until fully paid for and cleared through our financial institution." (Supp. Vandevere Aff. ¶ 2, Ex. A.) Lyon has also submitted evidence that it paid Syneron in full for the Equipment. (*Id.* ¶ 3, Ex. B.) Defendants have not submitted any evidence to indicate that Lyon is not the owner of the Equipment. Accordingly, the Court finds that there are no genuine issues of material fact regarding the issue of whether Lyon holds title to the Equipment and has standing to assert a claim against Defendants.

Second, Defendants assert that Lyon was an assignee under the Syneron Sales Agreement, and therefore that all of Syneron's obligations under the Syneron Sales Agreement (including warranties) are binding on Lyon. In that same vein, Defendants

assert that the failure of Syneron to render services made performance impossible and that Defendants have no obligations to either Syneron, or Lyon as an assignee, under the Syneron Sales Agreement.  The Court rejects this argument.  The record establishes that the parties intended the Agreement to be a finance lease, not a sales contract.  Under Minnesota law, a finance lease is a lease in which:

> (1) the lessor does not select, manufacture, or supply the goods,
>
> (2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease, and
>
> (3) either
>
>> (i) the lessee receives a copy of the contract evidencing the lessor's purchase of the goods or a disclaimer statement on or before signing the lease contract, or
>>
>> (ii) the lessee's approval of the contract evidencing the lessor's purchase of the goods or a disclaimer statement is a condition to effectiveness of the lease contract.

Minn. Stat. § 336.2A-103(g).  Here, the Agreement authorizes Lyon to finance the purchase of the Equipment and to lease it to Defendants.  Defendants selected the Equipment from Syneron, and Lyon simply financed its purchase.  The Agreement itself is titled "E-Z Lease Agreement" and the Agreement specifically states that it "is a finance lease under Article 2A of the UCC."  (Vandevere Aff. ¶ 3 at 2, ¶ 12.)  In addition, the Agreement contains a "hell or high water" provision that requires Defendants to make all payments under the Agreement, regardless of any claim they may have against Syneron or the Equipment.  Defendants agreed that their rights and remedies were governed exclusively by the Agreement and acknowledged that Lyon disclaimed any and all

warranties regarding the Equipment. Finally, there is no reference to the Syneron Sales Agreement in the Agreement. The Court concludes, as a matter of law, that the Agreement meets the definition of a finance lease and that Lyon is not an assignee of the Syneron Sales Agreement.[2]

Third, Defendants assert that they never legally accepted the Equipment and that therefore the Agreement was never actually entered into. Defendants assert that the Syneron Sales Agreement was an agreement for both goods and services and because Syneron never tendered the required services, there was no acceptance because the performance of the services were essential for the functioning of the Equipment. The Court disagrees. There is no language in the Agreement that indicates services were part of the Syneron Sales Agreement between Syneron and Defendants. In addition, it is clear from the terms of the Agreement that Lyon was not responsible for the Equipment or its performance and that Lyon expected payment regardless of the Equipment's performance. Again, the Agreement contains a "hell or high water" clause that made Defendants' payment obligations irrevocable and unconditional once the Equipment was accepted.

---

[2] Defendants also argue that the "hell or high water" provision in the Agreement is invalid because it violates public policy. The Court disagrees. Courts have consistently upheld "hell or high water" provisions in finance leases. *See, e.g, Lyon Fin. Servs., Inc. v. Oxford Maxillofacial Surgery, Inc.*, Civ. No. 08-5498, 2009 WL 2170999, at *2 (D. Minn. July 17, 2009). Moreover, Minnesota law clearly permits these provisions in finance leases. *See* Minn. Stat. § 336.2A-407 ("In the case of a finance lease, the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods.").

Fourth, Defendants assert that the causes of action against Defendants are without merit because Syneron fraudulently induced Defendants to enter into the Syneron Sales Agreement and that the Agreement with Lyon is tainted by Syneron's fraudulent acts and should act as a total defense to Lyon's action against Defendants. In support, Defendants claim that Lyon is an assignee within the meaning of the Syneron Sales Agreement and, therefore, is liable to Defendants for the remedy of rescission based on Syneron's conduct. With respect to Syneron's conduct, Defendants allege that Syneron aggressively marketed the Equipment and made numerous verbal and written representations, including promises of free marketing material, pricing support, and advanced technical and marketing training. (Dahiya Aff. ¶ 19.) In addition, Defendants have submitted evidence that Syneron claimed that they would guarantee satisfaction. (Aff. of Michael Shapiro ("Shapiro Aff.") ¶ 7.) Defendants allege that while they received the Equipment, they never received the training or marketing services that they were promised.

Defendants have asserted various claims against Syneron, including claims fraud and misrepresentation, based solely on Syneron's actions. On the record before the Court, however, Defendants cannot demonstrate any fraud, misrepresentation, or other misconduct on the part of Lyon. In fact, Defendants do not claim that any of Lyon's actions form the basis of its fraud and misrepresentation claims. Instead, Defendants seek to impute the alleged fraud of Syneron to Lyon. As discussed above, however, Defendants cannot demonstrate that Lyon was an assignee to the Syneron Sales Agreement. Neither can Defendants demonstrate that Syneron was Lyon's agent. The

Court concludes, therefore, that Defendants cannot use the alleged misconduct of Syneron as a defense to the performance of the Agreement with Lyon. *See, e.g.*, *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc.*, 382 F.3d 852, 856-57 (8th Cir. 2004) (applying Iowa law); *Lyon Fin. Servs., Inc. v. Marty Hearyman, MD*, No. A-08-1795, 2009 WL 1515598 at *4 (Minn. Ct. App. June 2, 2009).

Defendants also argue that the Agreement should be rescinded because of a mutual mistake, claiming it is "undisputed" that Lyon and Defendants were under the impression that Syneron would tender services along with the Equipment. Defendants, however, do not cite to any record evidence supporting its assertion that Lyon thought that services were included in the Syneron Sales Agreement. To the contrary, the record evidence demonstrates that there is no reference to the Syneron Sales Agreement in the parties' lease agreement.

In sum, the Court concludes that there are no genuine issues of material fact remaining and that Defendants have defaulted on the Agreement as a matter of law. Therefore, summary judgment is appropriate and will be granted on the issue of liability.

## II.     Damages

The Agreement provides that in the event of a default, Lyon "may recover interest on any unpaid balance at the rate of 8% per annum." (Vandevere Aff. ¶ 3, Ex. A at 2, ¶ 12.) In addition, the Agreement provides that if Lyon refers the "Agreement to an attorney for collection, [Defendants] agree to pay [Lyon's] reasonable attorney's fees and actual court costs." (*Id*.) The Court concludes that Lyon is entitled to recover both damages in the amount of the unpaid balance, plus interest and attorney fees and costs.

While Lyon has submitted affidavit evidence of its damages, the issue of the appropriate amount of damages has not been sufficiently briefed by the parties. Therefore, the Court respectfully requests that the parties submit limited briefing (a maximum of five pages per party) on the issue of appropriate damages and attorney fees. The Court directs the parties to agree on a suitable briefing schedule and to communicate the schedule to the Court by letter.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.      Lyon's Motion for Summary Judgment (Doc. No. 27) is **GRANTED** as to liability.

2.      The parties shall submit briefing on damages consistent with the Order.


Dated:  March 19, 2010                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge